No. 23-35516

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

OREGON ADVOCACY CENTER, et. al.,

*Plaintiffs-Appellees*,

v.

PATRICK ALLEN, et. al.

*Defendants-Appellees*.

v.

MARION COUNTY

*Movant – Appellant*

Appeal from an Order of the United States
District Court for the District of Oregon

Case No. 3:02-cv-00339-MO
Honorable Michael Mosman

**MOVANT-APPELLANT MARION COUNTY'S REPLY BRIEF**

Jane E. Vetto, OSB No. 914564
Marion County Legal Counsel
Keegan C. Murphy, OSB No. 194264
Senior Assistant Legal Counsel
555 Court St. NE, Suite 5242
P.O. Box 14500
Salem, OR 97309
Phone: (503) 588-5220
jvetto@co.marion.or.us

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ....................................................................................................1

I.   The County sought intervention at an appropriate stage of the proceeding. ....... 2

II.   The County's intervention will not prejudice the parties. ............................... 6

III.   The County did not impermissibly delay prior to seeking intervention. ......... 8

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

## Cases

*Dowell v. Board of Education*, 430 F.2d 865, 867 (10th Cir. 1970)………….11, 12

*Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C. Cir. 1972) 3, 4, 5

*Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986) ............................................. 3, 4

*United States v. City of Chicago*, 870 F.2d 1256 (7th Cir. 1989) ............................. 3

*United States v. Oregon*, 913 F.2d 576 (9th Cir. 1990) ................................... 2, 3, 9

*United States v. Washington*, 86 F.3d 1499 (9th Cir. 1996) ………………………..9

## Statutes

ORS 161.370……………………………………………………………………….8

## Rules

Fed. R. Civ. P. 24…………………………………………………………………...1

## INTRODUCTION

Movant-Appellant Marion County ("the County") brought this appeal seeking reversal of the district court's denial of its motion to intervene in this action on both mandatory and permissive grounds under Federal Rule of Civil Procedure ("FRCP") 24. Both Plaintiffs Disability Rights Oregon and Metropolitan Public Defender as well as Defendants David Baden and Dolores Matteucci (collectively "the parties") argue that intervention is inappropriate because the County's motion was untimely.[1] Specifically, they argue that (1) it is too late a stage in the proceeding to permit intervention, (2) the parties would suffer prejudice if intervention were allowed now, and (3) the County delayed too long before moving to intervene when it had notice in 2019 that the Plaintiffs would be seeking the release of individuals from custody during contempt proceedings.

The County offers several responses to these arguments. First, the parties merely state conclusively that it is "too late" in the proceeding for intervention without engaging with any legal authority on the subject. This Court has made clear that intervention is proper, even post-judgment, when enforcement proceedings have had an unexpected effect on a third party. Second, the County's requested relief—declarations and injunctions requiring OSH to provide transport

---

[1] Defendants make no argument that the County fails to satisfy any of the other requirements for either mandatory or permissive intervention.

1

within seven days and provide financial or other assistance to the County's community restoration program—would not require re-litigation of Dr. Pinals's recommendations or otherwise shift the focus of the case. Rather, the County's proposed complaint relates directly to the subject of these contempt proceedings: the reforms that need be undertaken to bring Oregon's aid and assist system into constitutional compliance and the impacts those reforms are having on others. Finally, Plaintiffs' 2019 contempt pleadings requested only the release of individuals awaiting competency restoration services until they could be admitted to OSH. Plaintiffs did not request an order allowing the early release of individuals before receiving the full measure of restoration services or otherwise relieving the state of its obligations. Accordingly, the County respectfully requests reversal of the district court's order denying intervention below.

## ARGUMENT

**I.**     **The County sought intervention at an appropriate stage of the proceeding.**

The parties' first argument is that, because final judgment was entered and contempt proceedings began years ago, it is "too late" now for the County to intervene. Answering Brief ("Ans. Br.") at 13. However, case law has never articulated any such limitation. On the contrary, "the length of time that has passed since a suit was filed does not alone determine timeliness." *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). As noted in the County's opening

brief, this Court has previously approved of intervention during the remedial phase of a case when relief ordered "had an unexpected effect on a third party." *Id.*

As examples, the *Oregon* case cites to three different decisions: *United States v. City of Chicago*, 870 F.2d 1256 (7th Cir. 1989), *Howard v. McLucas*, 782 F.2d 956 (11th Cir. 1986), and *Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C. Cir. 1972). In *City of Chicago*, a group of white police sergeants moved to intervene in a lawsuit several years after the district court entered an injunction requiring the city to address racial discrimination in its promotion process for sergeants. 870 F.2d at 1258. The sergeants sought intervention because, they alleged, the reforms that the city had undertaken with respect to the sergeants' promotion exam led to the test impermissibly discriminating against white candidates. *Id.* The city argued that the sergeants' motion was untimely and that they should have sought intervention much earlier, either eight years ago when the case was first filed or five years ago when the remedial phase first began. *Id.* at 1263. However, the court rejected the city's argument, pointing out that, at those earlier points, there would have been no reason for the sergeants to have intervened because the promotion process did not discriminate against them. *Id.* Hence, it did not matter that it had been years since the case began or judgment had been entered. *Id.*

*Howard* presents a similar scenario, making essentially the same point.

3

There, a group of Black employees at an Air Force logistics center filed suit alleging that the center had discriminated on the basis of race in choosing which employees to promote. *Howard*, 782 F.2d at 958. Nine years later, the parties settled and received preliminary approval for a consent decree that required the center to promote a certain number of Black employees. *Id.* Thereafter, a group of white and non-Black minority employees moved to intervene in the case to challenge the proposed settlement. *Id.* The district court denied their motion as untimely because the proposed intervenors had known about the suit for over nine years, but the Eleventh Circuit reversed its decision. *Id.* at 959. The court explained that it "cannot impute knowledge that a person's interests are at stake from mere knowledge that an action is pending, without appreciation of the potential adverse effect an adjudication of that action might have on one's interests." *Id.* At the time the case was filed, plaintiffs were not requesting the consent decree that was ultimately approved and the proposed intervenors were not otherwise required to anticipate that it would be granted. *Id.* at 959-60. Thus, the stage of the case did not foreclose intervention. *Id.* at 960.

Lastly, in *Hodgson*, a group of mine workers sought to intervene in an action brought by the Secretary of Labor seeking to lift several allegedly unlawful trusteeships imposed by the United Mine Workers of America on seven subordinate districts. 472 F.2d at 121. Several union members filed a motion to

4

intervene in the suit, but the district court denied their motion as untimely because, at the time of filing, the case had already been tried. *Id.* at 122. The DC Circuit Court of Appeals reversed the district court's decision. *Id.* at 130. The court explained that, even though the case had been filed seven years prior and trial had already occurred, "the amount of time which has elapsed since the litigation began is not in itself the determinative test of timeliness." *Id.* at 129. Rather, intervention was appropriate because the union members were seeking to participate only in the remedial phase of the case. *Id.*

Collectively, these three cases previously cited by this Court make the point that the length of time since a case was filed is not determinative when seeking intervention in the remedial phase of litigation to address the unexpected impacts of the case's resolution. The parties claim that the County fails to "cite authority supporting the proposition that a party can intervene in a case twenty-two years after the entry of final judgment for the purpose of reopening litigation on entirely new issues." Ans. Br. at 14-15. However, they do not meaningfully engage with this point in the County's Opening Brief or attempt to distinguish those cases here. Thus, the fact that this case was initially filed more than twenty years ago seeking different relief or that contempt proceedings seeking relief that did not impact Marion County began in 2019 do not foreclose intervention.

5

## II. The County's intervention will not prejudice the parties.

The parties next argue that the County should not be permitted to intervene in this action because it would cause them prejudice. Specifically, they suggest that allowing the County to intervene in this matter would risk upending the plan that they devised for OSH to achieve compliance with constitutional requirements. Ans. Br. at 15. They observe that it took the parties a significant amount of time to retain Dr. Debra Pinals and that she "spent at least six months reviewing an extensive amount of information and meeting regularly with the parties to discuss ideas for compliance with the permanent injunction." Ans. Br. at 15. However, none of the relief requested by the County in its proposed complaint seeks to disrupt the current plan for compliance. Rather, the relief the County requested was primarily aimed at allowing it to better manage the impacts of the parties' compliance plan which directly impacts county operations. For instance, the County requested an injunction requiring OSH to provide financial and other support necessary to allow the County to meet the increased demand for community restoration services brought on by the district court's order. ER-46. If anything, that request is the exact opposite of a request to re-litigate the compliance plan—it is a request for assistance so that the County can deliver the services necessary to *enable* the compliance plan.

The parties contend otherwise, pointing to the County's observation in its

6

Opening Brief that the County's claims and the *Mink* action share the common issue of "whether OSH can be brought into compliance by other means." Opening Brief ("Op. Br.") at 25. However, just because the two cases involve a common issue about bringing OSH into compliance does not mean that the County intends to challenge the established plan. Indeed, as noted above, the County's requested relief would not have allowed it to. It did not ask the district court to modify its order to change the compliance plan, and therefore could not seek to re-litigate it.[2]

The parties also argue that allowing the County to intervene would prejudice them by shifting the focus of the litigation "from individual civil rights to the impacts of the Defendants' actions * * * on the County." Ans. Br. at 16 (internal quotation marks omitted). However, the parties fail to acknowledge the shift in the subject matter of the litigation over the past twenty years from when it was first filed. Although this case was originally narrow in scope, concerning strictly the

---

[2] In a footnote, the parties also argue that the County's intervention would cause them prejudice because "[t]he county also suggested that . . . it might appeal the district court's order limiting admissions to OSH." Ans. Br. at 16. That argument is misleading. The portion of the County's motion to intervene quoted by the parties explains that the County is seeking intervention because it desires the right to seek review of adverse decisions, given that parties were now asking the district court to issue orders binding it. ER-21. The County at no point represented that it was seeking the right to appeal to challenge the compliance plan, nor would it have made sense to interpret the County's comment in the motion that way. The 30-day window to appeal the district court's September 1, 2022, order under Federal Rule of Appellate Procedure 4 had already passed before the County filed its motion to intervene and, thus, the County has no means to seek appellate review of the compliance plan.

7

constitutional rights of individuals awaiting transport to OSH, the remedial phase of the case encompasses a much broader array of issues. To understand the problems with Oregon's aid and assist system, Dr. Pinals met with a variety of stakeholders, including representatives from some community mental health programs. OSH-SER-24-25. Based on those limited conversations, Dr. Pinals developed a set of recommendations to best address capacity issues at OSH, including the expansion of community restoration services, which the district court later ordered OSH to take steps to implement. OSH-SER-41–42 (recommendations from Dr. Pinals's June report regarding community restoration); ER-108 (order to implement recommendations). Whether or not the County is capable of delivering those expanded services without additional assistance from OSH is part and parcel to that same conversation, such that the County's intervention would not introduce new issues or cause prejudice to the parties. Requiring the County to file another action to address those concerns separately would only multiply the number of ongoing cases on this issue and risk a disconnect between the decisions being made in this case and the impacts that they cause. This Court should not require it to do so.

**III.    The County did not impermissibly delay prior to seeking intervention.**

The parties' final contention is that the County delayed too long after learning that its interests as a community restoration provider could be implicated

8

in this case before moving to intervene. Ans. Br. at 17. First, they argue that the County should have been on notice as far back as 2019 that this case could have an impact on community restoration because of the amendments that the Oregon Legislature made to ORS 161.370 to narrow the criteria for commitment to OSH and place a greater emphasis on other methods for restoration, including community restoration. This argument fails because, even if the legislature's changes do reflect the intent to expand use of community restoration, the standard for measuring delay is not the time since a proposed intervenor knew that *something* might affect its interests. Rather, it is the time since a proposed intervenor learned that its interests "might be adversely affected by the outcome of *the litigation*," *Oregon*, 913 F.2d at 589, and that those interests are "no longer be[ing] protected adequately by the parties." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Even if the County could reasonably have expected the number of community restoration cases to increase as a result of the amendments to ORS 161.370, that in no way put the County on notice that portions of the statute would be suspended altogether as part of this litigation, leading to even further cases involving individuals with more acute symptoms.

  The parties' next argument is that the County should have been aware that resolution of this case would lead to an increased community restoration case load because the Plaintiffs' initial contempt pleadings requested the release of

9

individuals waiting for admission to OSH from custody. Ans. Br. at 20. In pertinent part, Plaintiffs' requested relief reads as follows:

> "Therefore, as Defendants have failed to show cause why they have violated the Court's injunction, Plaintiffs request the Court:
>
> 1) Enter a finding of contempt;
>
> 2) Order Defendants to either:
>
> a) Transport all individuals awaiting competency restoration services to either the state hospital or an appropriate outpatient restoration treatment program immediately, or;
>
> b) Release them from custody immediately, and;
>
> 3) Order Defendants to issue a Plan for Compliance within seven days of this Court's order."

ER-148.

The parties claim that the County could have anticipated that any released individuals would have an impact on the County's community restoration case load because those individuals "would presumably engage in community mental-health services or otherwise rely on county resources." Ans. Br. at 20. However, there is a *significant* difference between an order releasing individuals in custody while awaiting admission for restoration services and an order allowing OSH to cut short treatment for individuals who have already been admitted. If individuals were merely released from custody while waiting for services, then it would still be the state's ultimate responsibility to provide them restoration services in compliance

10

with circuit court orders. Moreover, even if some individuals awaiting admission were released chose to voluntarily seek community mental health services in the interim while awaiting admission to OSH, the number would have been far fewer and the duration of services much shorter than what is necessary under the district court's order. Accordingly, the mere fact that Plaintiffs requested the temporary release of individuals awaiting admission to OSH in no way put the County on notice of the much greater relief that they would later seek.

Finally, the parties argue that, even if the County only became aware of the threat to its interests in August of 2022, it still delayed too long in moving to intervene, instead choosing a "wait-and-see" approach. Ans. Br. at 22-23. However, the parties' argument fails to account for the County's unique position as an *amicus*. Even if the County waited until June of 2023 before officially moving to intervene, acting as an *amicus*, the County began participating in this case functionally as a party as soon as it became aware that its interests were threatened in August of 2022. That participation means that the County did not impermissibly delay prior to filing its motion to intervene.

Intervention at this stage in the case is hardly novel. In *Dowell v. Board of Education*, 430 F.2d 865, 867 (10th Cir. 1970), the plaintiffs filed suit seeking the desegregation of the Oklahoma public school system. Late in the case, after the district court had held a series of hearings on the Defendants' proposed plan, a

11

third-party group—the Baker group—sought intervention in order to challenge Defendants' plan. *Id.* at 868. Although the district court denied the Baker group's request, the Tenth Circuit reversed its decision, explaining that throughout the proceedings, the Baker group had already been treated functionally as a party to the case. *Id.* The court observed that the Baker group had attended the hearings on the desegregation plan and that the parties had called witnesses on their behalf, who had provided the group's perspective during the hearings. *Id.* Taken together with the extensive length of the case's remedial phase, the court explained that the unique circumstances permitted free intervention and withdrawal "so long as it does not seriously interfere with the actual hearings." *Id.*

The posture of this case directly mirrors that of *Dowell*. Prior to moving to intervene, the County as an *amicus* was treated as a party to the proceedings below, having participated in hearings on the relief that the district court ordered, ER-193, been part of the order's mediation, ER-197, and having been treated by the parties as bound by the order's terms. ER-67–73, 198. Nor do the parties offer any reason why permitting the County to intervene would "seriously interfere" with future hearings in the case. Accordingly, the County should have been permitted to intervene.

## CONCLUSION

In conclusion, the County is entitled to intervene in this matter. There is

12

ample precedent for intervention during the remedial stage of a case when necessary to address unexpected problems, the parties have not identified any substantive prejudice that they would suffer, and the County did not impermissibly delay prior to filing its motion. Accordingly, the County respectfully requests that this Court reverse the district court's ruling and permit it to intervene in this case.

Dated this 26th day of February, 2024.

Respectfully submitted,

JANE E. VETTO
MARION COUNTY LEGAL
COUNSEL

s/ Jane E. Vetto
Jane E. Vetto, OSB #914564
Marion County Legal Counsel
Keegan C. Murphy, OSB #194264
Senior Assistant Legal Counsel
Attorneys for Marion County